# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2023

Lyle W. Cayce
Clerk

No. 20-60778

Jorge Vicente Nivelo Cardenas,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A077 444 951

Before Stewart, Dennis, and Southwick, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Petitioner challenges the Board of Immigration Appeals' denial of his motion to reopen removal proceedings and rescind his *in absentia* removal order. This challenge adds to our recent caselaw analyzing different supposed flaws in notice given to individuals about removal hearings. In this case, the original 1999 Notice to Appear given to Petitioner soon after being detained did not schedule his removal hearing. When Petitioner was released a few weeks later, he signed a form that gave the address at which future notices could be given. The address had one incorrect letter in the name of the city but was otherwise completely accurate. Petitioner was informed he

must provide notice of any change of address. A few months later, notice of his scheduled hearing was sent to the slightly misspelled address. It was returned with the notation: "ATTEMPTED, NOT KNOWN." He did not attend the hearing and was ordered removed *in absentia*.

We conclude Petitioner forfeited his right to notice by failing to keep the immigration court apprised of his correct mailing address or to correct an erroneous address. We DENY his petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Jorge Vicente Nivelo Cardenas, a native and citizen of Ecuador, entered the United States without inspection on or about July 17, 1999. He was 25 years old. Soon after his entry, he was apprehended with others who had entered the country near Brownsville, Texas. On July 23, 1999, he was given a Notice to Appear ("NTA"), charging him as subject to removal because he was present in the United States without having been admitted or paroled. The NTA did not provide a hearing date or time. Nivelo Cardenas's then-current address was correctly listed on the NTA as the address of the processing center in Los Fresnos, Texas, where he was then detained.

The NTA informed Nivelo Cardenas that he was required to notify the immigration court immediately of any change in his address, that the Government would not be required to provide him written notice of his hearing if he did not provide an address at which he could be reached, and that the immigration judge ("IJ") could issue a removal order in his absence if he failed to attend a designated hearing. Nivelo Cardenas and the border patrol agent signed the certificate of service, which also stated Nivelo Cardenas "was provided oral notice in the Spanish language of the time and place of his . . . hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act." *See* 8 U.S.C. § 1229a(b)(7). Despite the statement in the certificate of service about oral notice, the Government concedes

such notice was not given then because the time and place information was not yet known.

On August 2, 1999, notice was served on Nivelo Cardenas that his case had been scheduled for 9:00 a.m. on August 12, before the immigration court at the Los Fresnos center where he was detained. On August 12, he was served with notice of a hearing scheduled for August 19. He was released from custody on August 17. On that date, he signed a form entitled "Notification Requirement for Change of Address," indicating his mailing address was "109 Cedar Ave" in "Patcbogue, NY 11772." The same address was also reflected in a Form I-830, "Notice to EOIR: Alien Address," that was dated the same day. No such city exists. The "b" in the name should have been an "h," *i.e.,* Patchogue.

On October 1, 1999, the immigration court mailed Nivelo Cardenas a hearing notice to the address with the misspelled city, with the hearing location and a date and time of January 28, 2000, at 10:00 a.m. Nivelo Cardenas did not appear at the scheduled hearing, and the IJ issued a removal order *in absentia*.

In November 2018, counsel for Nivelo Cardenas filed a motion to rescind the removal order and reopen his removal proceedings. He asserted he never received notice of the January 2000 hearing because the notice was addressed improperly and was therefore returned without delivery. The motion included Nivelo Cardenas's unsworn written statement indicating, among other things, that he gave an immigration officer his brother's address in "Patchogue, New York"; that he checked his mailbox every day for a hearing notice but never received anything; and that he gave up after two years of waiting to hear from the immigration court. The motion also cited a "bag and baggage letter" that correctly spelled "Patchogue" as evidence he provided the immigration court with the correct address and was not responsible

for the improperly addressed hearing notice. Such a letter is notice that the person must surrender himself to immigration authorities, bringing his "bag and baggage" preparatory to being physically removed from the country. *See Nen Di Wu v. Holder*, 646 F.3d 133, 134 (2d Cir. 2011). The Government did not respond to the motion.

The IJ denied the motion on February 20, 2019. The IJ found the hearing notice was mailed to the "Patcbogue" address Nivelo Cardenas provided to immigration authorities, as documented in the form he signed. The IJ also found the mailing was returned to the court by the United States Postal Service as undeliverable with a stamped notation of "Returned to sender, Attempted, Not known," and a handwritten notation stating, "Please return it to the sender." The IJ reasoned that Nivelo Cardenas was notified of his obligation to keep the court apprised of his correct mailing address; that there was no showing he informed the court of his correct address before January 28, 2000; and that he was provided with proper notice of the January 28, 2000, hearing because there was proof of attempted delivery to the last address he provided.

The IJ acknowledged Nivelo Cardenas's written statement filed with the motion but concluded the statement should not be considered because it was not sworn before a notary public or executed under penalty of perjury. Regardless, the IJ reasoned the outcome would be the same even if the statement were considered.

Nivelo Cardenas appealed to the Board of Immigration Appeals ("BIA"). He first argued the IJ relied on documents that were not in the record of his immigration proceedings, a claim based on the fact those documents were not among the records Nivelo Cardenas obtained pursuant to a request for his file under the Freedom of Information Act ("FOIA"). He also challenged the IJ's application of the law and contended the IJ failed to

give proper consideration to the bag and baggage letter and his written statement. Further, he asserted that if his proceedings were reopened, he would be eligible for cancellation of removal under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), because his NTA did not provide the time of his hearing. That Supreme Court decision held an NTA that fails to designate the time or place of the removal hearing is not valid under 8 U.S.C. § 1229(a) and therefore does not constitute the predicate *for the stop-time rule* for cancellation of removal. *Pereira*, 138 S. Ct. at 2113–14. Since then, we have needed to decide whether *Pereira* applies more broadly than to the stop-time rule.

On August 5, 2020, the BIA upheld the IJ's decision and dismissed the appeal. The BIA determined Nivelo Cardenas was notified of his duty to provide a correct address — which included the obligation to correct any errors in his listed address — but that he failed to do so. Therefore, the BIA concluded, he received constructive notice of the hearing when notice was mailed to the last address he provided. The BIA additionally stated it appeared the Postal Service returned the mailing not because it was undeliverable but because someone at the address asked that it be returned. Nivelo Cardenas's argument regarding the bag and baggage letter was rejected because he had not shown he provided the address listed in that letter or that he otherwise corrected the misspelled city name in his address.

The BIA then determined his failure to update his address for over 18 years showed a lack of due diligence and undermined his contention he took sufficient action to maintain his rights in the removal proceedings. The BIA also observed that Nivelo Cardenas did not identify any effort to contact the immigration court in the intervening years. Noting due diligence was a significant factor supporting reopening, the BIA determined Nivelo Cardenas's lack of diligence militated against reopening.

No. 20-60778

Nivelo Cardenas filed a motion for reconsideration in the BIA that made several arguments: (1) It was inappropriate to consider evidence that was not provided under his FOIA request; (2) The BIA erred by engaging in *de novo* factfinding rather than reviewing the IJ's factual findings for clear error; (3) Due diligence was irrelevant to reopening; (4) The BIA erred in concluding he was properly notified of the January 28, 2000, hearing; (5) The BIA improperly considered due diligence in this context of reopening based on lack of notice; and (6) The immigration court lacked subject matter jurisdiction due to deficiencies with the NTA.

On June 4, 2021, the BIA denied reconsideration. A "denial of a motion to reconsider is a separate final order, requiring its own petition for review." *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Nivelo Cardenas timely petitioned this court for review of the BIA's denial of reconsideration. He had filed earlier a timely petition for review of the BIA's August 2020 decision. *See* 8 U.S.C. § 1252(b)(1). Both petitions will be considered in this opinion.

## DISCUSSION

The primary issue on appeal is whether Nivelo Cardenas was entitled to have the *in absentia* removal order rescinded and proceedings reopened due to an improper address used to mail notice of the January 2000 hearing. There are other issues raised, though, and we will review them as well.

We review both the original BIA decision and the decision to deny reconsideration. The errors raised as to the denial of the motion to reconsider are largely the same issues raised in the challenge here to the initial BIA decision. Our review of a denial of reconsideration is highly deferential; we will uphold the denial so long as it was "not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Singh v.*

6

*Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (quotation marks and citation omitted). As to review of BIA decisions generally, we apply a *de novo* standard to the BIA's legal conclusions. *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021). Fact-findings are reviewed for substantial evidence and will not be overturned unless the evidence compels a contrary conclusion. *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 204 (5th Cir. 2017). "[W]e review the BIA's order and will evaluate the [IJ's] underlying decision only if it influenced the BIA's decision." *Id.*

Generally, we may uphold a BIA decision only on the basis of its stated rationale, but "[e]ven if there is a reversible error in the BIA's analysis, affirmance may be warranted where there is no realistic possibility that, absent the errors, the BIA would have reached a different conclusion." *Luna-Garcia v. Barr*, 932 F.3d 285, 291 (5th Cir. 2019) (quotation marks and citation omitted).

## I.     *Notice arguments*

A Notice to Appear initiates removal proceedings. *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021). The NTA must specify certain information, including "[t]he time and place at which the proceedings will be held." § 1229(a)(1)(G)(i). Section 1229(a)(2) applies when the Government wishes to change the alien's hearing date. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1483 (2021). Changing the hearing date requires service of a written notice specifying "the new time or place of the proceedings" and the consequences of failing to attend such proceedings, but such written notice is not required if the alien is not in detention and "has failed to provide the address required under" Section 1229(a)(1)(F). § 1229(a)(2). The statutory requirements are that an alien (1) provide "a written record of an address . . . at which the alien may be contacted" with respect to his removal proceedings, and (2) immediately provide "a written record of any change of the alien's

address." § 1229(a)(1)(F)(i), (ii).  Service of a written hearing notice by mail is "sufficient if there is proof of attempted delivery to the last address provided by the alien in accordance with" Section 1229(a)(1)(F).  § 1229(c).

Other subsections govern the issuance of an *in absentia* removal order. Under Section 1229a(b)(5)(A), an alien who does not attend a proceeding "after written notice required under paragraph (1) or (2) of section 1229(a) . . . has been provided to the alien" shall be ordered removed *in absentia* if the Government "establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable."  The Government satisfies the notice requirement if the written notice is "provided at the most recent address provided under section 1229(a)(1)(F)."  § 1229a(b)(5)(A).  However, "[n]o written notice shall be required . . . if the alien has failed to provide the address required under section 1229(a)(1)(F)."  § 1229a(b)(5)(B).

In moving to have his *in absentia* removal order rescinded, Nivelo Cardenas relied on a statutory subsection allowing rescission if "the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)."  § 1229a(b)(5)(C)(ii).  Nonetheless, if an alien fails to provide a correct mailing address, including failure to correct an erroneous address, "he was not entitled to actual notice of his removal hearing."  *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 149 (5th Cir. 2018).

While the petition for review was pending in this court, the Supreme Court issued an opinion holding that before an NTA could invoke the stop-time rule[1] for cancellation of removal, all necessary information, including

---

[1] The stop-time rule provides that an immigrant's period of continuous, lawful presence in the United States ends when the person is served with a proper NTA.  *Niz-Chavez*, 141 S. Ct. at 1479 (citing § 1229b(d)(1)).

the time and place of the hearing, must be in one document. *Niz-Chavez*, 141 S. Ct. at 1480–86. The necessary details include the time and place of the removal hearing. *Id.* at 1484. Shortly thereafter, we held this single-document rule also applied in the *in absentia* context, such that an NTA containing all the information specified under Section 1229(a)(1) is required to sustain an *in absentia* removal order. *Rodriguez v. Garland*, 15 F.4th 351, 355 (5th Cir. 2021). How *Rodriguez* applies to this case is disputed.

In *Rodriguez*, the petitioner was mailed an NTA at his address in Texas, but it lacked the date and time of his immigration hearing. *Id.* at 353. A notice of hearing was later mailed to the same address, but Rodriguez contended he did not receive the hearing notice because by then he had moved. *Id.* He was ordered removed *in absentia* when he did not appear at the hearing, and the BIA upheld the removal order. *Id.* at 353–54. We vacated based on *Niz-Chavez*, reasoning the BIA erred in determining the NTA and the subsequent written hearing notice together satisfied the notice requirements of Section 1229(a). *Id.* at 355–56. We highlight now, and will explain why later, that Rodriguez had provided a valid address.

### a.     *Exhausted claim*

We start with whether we can even reach this issue. If the argument now presented was not earlier raised with the BIA, the issue is unexhausted and we have no jurisdiction to consider it. *See* § 1252(d)(1); *Arce-Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007). Exhaustion, though, includes not only what the immigrant presented, but also what the BIA considered on the merits, regardless of the adequacy of the alien's presentation. *Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010). "[We] will address an issue on the merits when the BIA has done so, even if the issue was not properly presented to the BIA itself." *Id.* We examine both possible routes to exhaustion.

In his proceedings before the IJ and BIA, Nivelo Cardenas did not argue that his motion to rescind and reopen should be granted because his NTA did not provide the schedule for his hearing, *i.e.*, a *Pereira* argument. He did argue to the IJ that because the NTA did not use the proper address, there should be no presumption of delivery. He first cited *Pereira* in his brief to the BIA. There, his argument was that *Pereira* made him eligible for cancellation of removal. He relied on *Pereira* in his motion to reopen for the same point. The first time Nivelo Cardenas argued there was no subject matter jurisdiction was in his motion for reconsideration at the BIA. His argument relied on the return of the notice of hearing as undelivered, not on *Pereira*.

The BIA's order was clear, though, that it rejected a *Pereira* challenge to subject matter jurisdiction:

> The respondent argues that the Immigration Court does not have jurisdiction over these proceedings under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) (Respondent's Mot. at 21-23). However, in *United States v. Pedroza-Rocha*, 933 F.3d 490 (5th Cir. 2019), the court held that the lack of time and place on an NTA does not divest the Immigration Court of subject matter jurisdiction. *Id.* at 497. Thus, the respondent's NTA was not defective and jurisdiction in this case is proper.

It does not matter whether the BIA misstated Nivelo Cardenas's argument. The important matter is the BIA analyzed the currently-made subject matter jurisdiction argument on the merits, satisfying the need for exhaustion. *See Lopez-Dubon*, 609 F.3d at 644.

### b.    Forfeiting right to notice

Under the Immigration and Nationality Act, sending "by mail under this section shall be sufficient if there is proof of attempted delivery to the last address provided by the alien in accordance with subsection (a)(1)(F)."

§ 1229(c).[2] There are different contexts in which the sufficiency of notice of a removal hearing can arise. Since *Niz-Chavez*, we have addressed several variations: *Spagnol-Bastos v. Garland*, 19 F.4th 802 (5th Cir. 2021); *Gudiel-Villatoro v. Garland*, 40 F.4th 247 (5th Cir. 2022); and *Platero-Rosales v. Garland*, 55 F.4th 974 (5th Cir. 2022). We will discuss those opinions.

In the earliest of the three cases, in 2000, the NTA served on Spagnol-Bastos did not provide a hearing date and time; the only address he allegedly provided before his release on bond was far more errant than the one in the case before us. *See Spagnol-Bastos*, 19 F.4th at 804. It was "102-169 F Apt 3C, Manhaion N.Y. N.Y. 10029," documented in a Form I-830, while the correct address (not shown until 18 years later) was allegedly "169 East 102nd Street, #3C, New York, 10029." *Id.* at 804–05. He was released on bond, then a hearing notice was later mailed to the incorrect address and returned as "unclaimed." *Id.* at 804. Spagnol-Bastos did not appear and was ordered removed *in absentia*. *Id.* About 18 years later, he moved to rescind the removal order and reopen his proceedings because he had provided the correct address but it erroneously had been recorded on the Form I-830. *Id.* at 804–05.

We held: "Because Spagnol-Bastos failed to provide 'an address . . . at which [he] may be contacted respecting' the removal proceedings, § 1229(a)(1)(f), he forfeited his right to notice under § 1229a(b)(5)(B) and therefore may not now seek to reopen his removal proceedings and rescind the removal order." *Id.* at 806–07. The referenced statute states that "[n]o

---

[2] Here, there is a dispute as to whether the petitioner was responsible for the error in the address used for the mailed notice or if immigration authorities recorded the address incorrectly. If there is caselaw that an address, if only insignificantly incorrect, moots such a fact question, it has not been cited to us. Therefore, even though it may be that this one-letter error, since the zip code and street address were correct, almost certainly would not interfere with delivery, we will not consider the degree of error.

written notice shall be required under subparagraph (A) [that allows removal if an alien does not attend proceedings for which notice was given] if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." § 1229a(b)(5)(B). We also explained that "Spagnol-Bastos's reliance on *Rodriguez* is misplaced because, unlike Spagnol-Bastos, Rodriguez provided immigration authorities with a viable mailing address and therefore did not forfeit his right to notice under § 1229a(b)(5)(B)." *Id.* at 808 n.2.

In the second recent precedent, the alien did not provide any address after being personally served with an NTA that lacked a hearing date and time. *Gudiel-Villatoro*, 40 F.4th at 248. He was ordered removed *in absentia* and thereafter filed a motion to reopen the proceedings and rescind the removal order. *Id.* We rejected Gudiel-Villatoro's argument that his NTA needed to include the date and time of his removal proceeding. *Id.* at 249. The court indicated an alien's right to have his *in absentia* removal order rescinded and proceedings reopened if the NTA did not include all the information specified in Section 1229(a)(1) "does not apply when the alien fails to provide an address where he can be reached." *Id.* An alien who fails to provide a usable mailing address forfeits his right to notice pursuant to Section 1229a(b)(5)(B). *Id.* We recounted past decisions that "held that an alien has not provided a 'viable mailing address' when he fails to provide any address,[3] neglects to update an old address,[4] or fails to correct an erroneous address.[5]" *Id.* at 249. Because Gudiel-Villatoro did not provide any address at all, the

---

[3] *Hernandez-Castillo*, 875 F.3d at 202, 206.

[4] *Gomez-Palacios v. Holder*, 560 F.3d 354, 357, 360–61 (5th Cir. 2009).

[5] *Mauricio-Benitez*, 908 F.3d at 148–49.

No. 20-60778

court concluded he was not entitled to reopening of his removal proceedings on the ground that his NTA lacked the hearing date and time. *Id.* at 249.[6]

In another recent opinion, the NTA lacked a hearing date and time, and the alien had not provided *any* address. *Platero-Rosales*, 55 F.4th at 976. She was ordered removed *in absentia*; 14 years later, she filed a motion to reopen the proceedings and rescind the removal order. *Id.* The court rejected her argument that the NTA needed to include the time and place of her removal proceeding. *Id.* at 977. Citing *Spagnol-Bastos* and *Gudiel-Villatoro*, the court held that, under Section 1229a(b)(5)(B), Platero-Rosales forfeited her right to notice and consequently could not seek to reopen the removal proceedings and rescind the *in absentia* removal order for lack of notice. *Id.*

We find Chief Judge Richman's concurring opinion in *Platero-Rosales* particularly helpful. She wrote that "providing the alien with a 'notice to appear' that must necessarily include the time and place of a removal hearing, is not a prerequisite to the applicability of § 1229a(b)(5)(B)." *Id.* at 979 (Richman, C.J., concurring). After analyzing the relevant statutory provisions, she concluded, "the statutes provide that the consequence of failing to provide an address is that the alien can be removed *in absentia*." *Id.* at 980. Additionally, she addressed the argument that *Rodriguez* may conflict with *Spagnol-Bastos* and *Gudiel-Villatoro*. *Id.* at 980–81. She determined *Rodriguez* is not controlling in circumstances like here, or like *Spagnol-Bastos* and

---

[6] Shortly after *Gudiel-Villatoro*, this court held, in an unpublished case, that an alien who initially provided immigration officials with an address, but failed to update it after relocating, forfeited her right to notice for purposes of her *in absentia* removal order and her motion to rescind the order and reopen proceedings. *Amaya-Ventura v. Garland*, No. 20-61076, 2022 WL 2871855, at *2 (5th Cir. July 21, 2022).

No. 20-60778

*Gudiel-Villatoro*, where the alien does not provide any address, update an old address, or correct an erroneous address:

> The *Rodriguez* decision is not precedential with regard to the issue before our court because the record in *Rodriguez* reflects that the [BIA] did not rest its decision on, or even discuss, 8 U.S.C. § 1229a(b)(5)(B), which says that "[n]o written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." . . . By contrast, our court's decisions in *Spagnol-Bastos v. Garland* and *Gudiel-Villatoro v. Garland* do squarely address the issue we confront today. Accordingly, they are binding precedent, and they govern under our rule of orderliness.

*Id.* (footnotes omitted).

This foundation of caselaw laid, we examine the parties' arguments. The Government insists the recent caselaw means that an alien forfeits notice when he fails to provide an address, update an old address, or correct an erroneous address. Thus, the Government argues, Nivelo Cardenas forfeited his right to notice when he failed to keep the immigration court apprised of his correct mailing address/to correct an erroneous address.

Nivelo Cardenas argues that, under the rule of orderliness,[7] *Rodriguez* governs this case because it conflicts with *Spagnol-Bastos*, *Gudiel-Villatoro*, and *Platero-Rosales*. Further, he contends *Spagnol-Bastos* misstated the facts

---

[7] Under the rule of orderliness, "one panel of our court may not overturn another panel's decision, absent an intervening change in the law," such as a Supreme Court or *en banc* decision. *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (quotation marks and citation omitted). That is so even if the earlier "panel's interpretation of the law appears flawed." *United States v. Ghali*, 699 F.3d 845, 847 (5th Cir. 2012) (quotation marks and citation omitted). To the extent two panel decisions conflict, the earlier decision controls. *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 497 (5th Cir. 2016).

14

of *Rodriguez* when it sought to distinguish it on the ground that Rodriguez had provided "a viable mailing address." Nivelo Cardenas asserts that Rodriguez had initially given a correct address but failed to update it after moving.[8] Our review indicates *Rodriguez* does not state whether the petitioner provided an updated address; all we know is that he claimed he had a different address by the time the notice of hearing was sent. *See Rodriguez*, 15 F.4th at 353.

We see the following as the proper manner to understand these precedents. The specific issue before the court in *Rodriguez* was "whether the § 1229(a) notice requirements as interpreted in the stop-time context in *Pereira* and *Niz-Chavez* apply to the provision governing recission of an *in absentia* removal order at issue in this case." 15 F.4th at 355. We answered: "Under *Niz-Chavez*'s interpretation of § 1229(a), we therefore require a single document containing the required information in the *in absentia* context." *Id.* *Niz-Chavez* did not analyze any questions that could arise if the address were inaccurate; *Rodriguez* did not discuss that issue either. Specifically, the court did not address whether an alien could forfeit his right to notice under Section 1229a(b)(5)(B), nor did it even cite that subsection.[9] It thus did not consider whether its holding — that a single document containing the requisite information is required under Section 1229(a) in the *in*

---

[8] Judge Duncan's concurrence and Judge Elrod's dissent in the denial of rehearing *en banc* in *Rodriguez* indicate Rodriguez and the Government were in dispute regarding whether he submitted a change-of-address form after moving. *See Rodriguez v. Garland*, 31 F.4th 935, 938 n.6 (5th Cir. 2022) (Duncan, J., concurring); *id.* at 939–40, 939 n.2 (Elrod, J., dissenting).

[9] When this court, narrowly, denied rehearing *en banc* in *Rodriguez*, one dissenting judge referred to the Section 1229a(b)(5)(B) question and stated that further development of the facts about Rodriguez's change of address might show he failed to update it and therefore was not entitled to notice at all. *Rodriguez*, 31 F.4th at 939 n.2 (Elrod, J., dissenting).

*absentia* context — was a prerequisite to the applicability of Section 1229a(b)(5)(B). We examined the briefs in *Rodriguez* and find none that cited subsection 1229a(b)(5)(B), though all cited subsections (b)(5)(A) and two cited subsection (b)(5)(C).

The question whether Rodriguez updated his address before the notice of hearing was sent was not discussed and is factually unclear. There was no argument in *Rodriguez* about the applicability of Section 1229a(b)(5)(B). Some members of this court recently expressed views about whether an issue never discussed in a case could be the foundation for the rule of orderliness. *See United States v. Castillo-Rivera*, 853 F.3d 218, 221 n.1 (5th Cir. 2017) (majority pretermits); *id.* at 232–37 (Smith, J., dissenting) (rule of orderliness should not extend to unaddressed issues). We conclude, though, that because the *Rodriguez* opinion never stated whether an address change was submitted, and apparently the record itself is unclear, *see supra* n.8, it would be disorderly to say any binding, implicit holding arose.

What is clear is that *Spagnol-Bastos*, *Gudiel*, and *Platero-Rosales* all held an alien could forfeit his right to notice under Section 1229a(b)(5)(B), regardless of whether the NTA contained the hearing time and place, if the alien failed to provide the immigration court with a mailing address at which he could be notified. Chief Judge Richman's concurrence in *Platero-Rosales*, which we find persuasive, distinguishes *Rodriguez* from these subsequent cases, explaining why it is not necessary to apply *Rodriguez* under the rule of orderliness. 55 F.4th at 978–81 (Richman, C.J., concurring). We also agree with her conclusion that "providing the alien with a 'notice to appear' that must necessarily include the time and place of a removal hearing, is not a prerequisite to the applicability of § 1229a(b)(5)(B)." *See id.* at 979.

Nivelo Cardenas also contends an alien's failure to correct a misspelled address in an NTA, as was the case in *Mauricio-Benitez*, should differ

in legal effect from a failure to correct a misspelled address in a document other than an NTA.  We see no basis to distinguish an alien's failure to correct a misspelled address in an NTA from a failure to correct a misspelled address in a document other than an NTA.  How the error occurred cannot be ascertained now, but Nivelo Cardenas signed the form with the one-letter error in the name of the city to which notices were to be sent.

In summary, we hold: (1) *Rodriguez* does not apply here; (2) *Spagnol-Bastos*, *Gudiel*, and *Platero-Rosales* govern this case; (3) the applicable rule from those cases is that an alien who fails to provide a viable mailing address/to correct an erroneous address forfeits his right to notice under Section 1229a(b)(5)(B); and (4) Nivelo Cardenas forfeited his right to notice by failing to correct the erroneous address listed in his "Notification Requirement for Change of Address" and Form I-830.

## II.    *Additional arguments as to why the BIA erred*

In addition to the notice issues, Nivelo Cardenas raises several arguments as to why the BIA erred in dismissing his appeal and denying his motion for reconsideration.

Nivelo Cardenas argues the IJ and BIA improperly discounted his written statement that he provided the immigration court with the correct address.  The only relevant section of his statement is this: "I gave the immigration officer my brother's address in Patchogue, New York."  Even if the IJ and BIA accepted the statement as true, the evidence is that Nivelo Cardenas signed the "Notification Requirement for Change of Address," and the misspelled city name was on the form.  The Form I-830 also had the misspelling.  Even if the error were due to fault by the immigration officer, Nivelo Cardenas was obligated to correct that address pursuant to Sections 1229(a)(1)(F)(i)–(ii) and 1229a(b)(5)(B).  *See Mauricio-Benitez*, 908 F.3d at 148.  We find "no realistic possibility" the IJ or BIA would have reached a

different conclusion even if it had considered his written statement. *See Luna-Garcia*, 932 F.3d at 291 (quotation marks and citation omitted).

Error also is alleged as to the bag and baggage letter. The BIA discussed the letter only in responding to Nivelo Cardenas's arguments on appeal and, thus, the discussion did not constitute an impermissible factual finding. Regardless, even though the bag and baggage letter contained the correct address, it does not contain a date, nor does it state by whom it was created. Therefore, it does little to show Nivelo Cardenas timely corrected with the immigration court the typographical error contained in the "Notification Requirement for Change of Address" and Form I-830. Accordingly, even if the BIA engaged in impermissible factfinding, affirmance is warranted because "there is no realistic possibility" the bag and baggage letter could prove Nivelo Cardenas timely corrected the error in his address through the appropriate channels. *See id.*

Another argument is that the BIA improperly made a fact-finding about the meaning of the handwritten note on the returned notice of hearing — "Please return it to the sender." The BIA found that someone who received the letter must have requested it be returned. Even if that finding was in error, it would not warrant reconsideration. The finding is too insignificant to have caused the BIA to have reached a different conclusion without it. *See id.* The fact remains that Nivelo Cardenas did not correct the typographical error.

Nivelo Cardenas also argues the BIA improperly considered due diligence in its analysis. The BIA may consider an alien's due diligence and the credibility of the statements in the alien's affidavit to determine whether the presumption of effective service by regular mail was rebutted. *Matter of M-R-A*, 24 I & N Dec. 665, 676 (BIA 2008); *see also Mauricio-Benitez*, 908 F.3d at 150. In considering due diligence here, the BIA was addressing Nivelo

Cardenas's contention in his affidavit that he checked his mailbox every day for his Notice of Hearing. Consequently, the BIA did not commit reversible error by considering Nivelo Cardenas's due diligence for purposes of his motion to reopen for lack of notice. Either way, again, "there is no realistic possibility" the BIA would have reached a different conclusion absent the due diligence analysis. *See Luna-Garcia*, 932 F.3d at 291 (quotation marks and citation omitted).

In addition, Nivelo Cardenas contends the BIA failed to consider his arguments that the IJ lacked subject matter jurisdiction. Specifically, he asserts subject matter jurisdiction did not exist because the Department of Human Services ("DHS") failed to *simultaneously* serve an NTA on him when DHS presented the NTA to the IJ, as required by 8 C.F.R. § 1003.32 (2000) and 8 C.F.R. § 1003.14(a) (2000).[10] Nivelo Cardenas concedes, however, that the lack of a simultaneous filing of the NTA here occurred in relation to an *in absentia* hearing; thus, his cited regulations were not violated. *See* 8 C.F.R. § 1003.32(a) (2000) ("*Except in in absentia hearings,* a copy of all documents (including proposed exhibits or applications) filed with or presented to the [IJ] shall be simultaneously served by the presenting party on the opposing party or parties.") (emphasis added); 8 C.F.R. § 1003.14(a) (2003).

Additionally, Nivelo Cardenas maintains that subject matter jurisdiction did not exist, because his NTA was void for willfully misrepresenting he was given oral notice of the time and place of his hearing. We disagree. As the Government explains, "if the date and time information is not yet known, and Nivelo is informed of that fact, then he has been provided the 'date and time' information as was known at the time and consistent with the" NTA.

---

[10] 8 C.F.R. § 3.14(a) (2000) was recodified as 8 C.F.R. § 1003.14(a) on February 28, 2003. 68 FR 9830 (Feb. 28, 2003).

No. 20-60778

We see no error in the BIA's concluding it had subject matter jurisdiction over the case, even if it did not specifically address each of Nivelo Cardenas's jurisdictional arguments.

The petition for review is DENIED.